**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **LUCAS BRUCE** | **CIVIL ACTION NO. 3:17-CV-414** |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **CHAD LEE, ET AL** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on March 15, 2017, by *pro se* plaintiff Lucas Bruce. Plaintiff is incarcerated at the Franklin Parish Detention Center (FPDC) in Winnsboro, Louisiana. He sue**s** Chad Lee, Ronnie Fussell and Kam Harper. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE.**

### *Statement of the Case*

Plaintiff, a pre-trial detainee, was transferred back to FPDC from Colfax Detention Center on January 27, 2017, and placed in a holding cell by Warden Chad Lee, for his "own protection." [Rec. Doc. 1, p. 3; Rec. Doc. 1-1] Lee gave orders that plaintiff should not be allowed to use the phone or purchase writing materials. *Id.*

On February 22, 2017, Kam Harper sprayed plaintiff with pepper spray and wrote him up for trying to make a phone call. *Id.* He went to DB Court on February 26, 2017, where Ronnie Fussell took away his visitation rights for 60 days. *Id.*

Plaintiff argues that he has no way to make bond because he cannot let his loved ones know what to do to get him out. Id.

He attaches to his Complaint the ARP he submitted on February 16, 2017, whereby he complained that he has not been able to write or call his family regarding bond. [Rec. Doc. 1-1] He states that Warden Lee has told him that "if you are in the hole you can not use the phone or make commissary." *Id.* Ronnie Fussell answered his ARP stating, "on 2-15-16 you were given a special visit with your mother by me Lt. Fussell. The week before this you were given a special visit with your grandpa Larry Bruce. As far the phone + commissary goes you can move to a dorm and get both. That's your choice." *Id.*

### Law and Analysis

### 1. Initial Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as

frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

## 2. Right to Use Telephone Claim

Plaintiff alleges that his constitutional rights have been violated as a result of restrictions put on his telephone use while at FPDC. It is well settled law that prison officials have broad discretion to administer conditions of confinement, and the federal courts will not interfere with legitimate prison administration in the absence of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 547-48, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990). Moreover, prisoners have "'no right to unlimited telephone use. 'Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'" *Waganfeald v. Gusman*, 674 F.3d 475 (5th Cir. 2012) (quoting *Douglas v. Gusman*, 567 F.Supp.2d 877, 886 (E.D. La. 2008)); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir. 1982); *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986)). "Prisons legitimately impose a variety of restrictions on inmates'

use of telephones." *Roy v. Stanley*, No. 02-CV-555-JD, 2005 U.S. Dist. LEXIS 20644, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005) (citing *United States v. Lewis*, 406 F.3d 11, 13 (1st Cir. 2005); *Gilday v. Dubois*, 124 F.3d 277, 293 (1st Cir. 1997); *Spurlock v. Simmons*, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000)).

In this regard, an action by prison officials which restricts or limits an inmate's access to the telephone does not violate constitutional rights as long as the inmate does not suffer from an inability to communicate with the courts, counsel, family or friends. *Hill v. Estelle*, 537 F.2d 214 (5th Cir. 1976). In the instant case, while plaintiff makes the allegation that he is unable to contact his family regarding bond, the facts before this Court prove otherwise. First, the ARP submitted as an exhibit to his complaint establishes that he was given two visits with family members in the weeks prior to filling the instant complaint. Moreover, the fact that he mailed the instant complaint via the United States Postal Service establishes that he had access to paper and at least two stamps and, therefore, could have written to his family members. [Rec. Doc. 1-2] Finally, the ARP makes clear the prison's policy to restrict phones and commissary to those not in general population dorms. The prison official, Defendant Lt. Fussell, provided plaintiff with the option to move to a dorm where he would have the access he seeks. Thus, the Court concludes that the plaintiff has failed to show that unreasonable limitations were placed on his ability to use the telephone. *See Castillo v. Blanco,* 2007 U.S. Dist. LEXIS 99502, 2007 WL 2264285 (E.D. La. 2007)(finding no violation where inmate was denied use of telephone while housed in administrative segregation, "especially where adequate means of communication, such as access to the mail, [was] available"*); Decraene v. United States,* 1999 U.S. Dist. LEXIS 5996, 1999 WL 246708 (E.D. La., April 26, 1999) (same); *Brown v. Day,* 1999 U.S. Dist. LEXIS 15970, 1999 WL 816378 (E.D. La., Oct. 7, 1999) (dismissing claim, as

frivolous, that inmate was not allowed to utilize the telephone for a period of 84 days). Cf., *Lewis v. Cockrell*, 54 Fed. Appx. 795 (5 Cir. 2002) (concluding that 90-day deprivation of telephone privileges did not implicate a protected liberty interest); *Mays v. Reese*, 2006 U.S. Dist. LEXIS 94752, 2006 WL 3877391 (S.D. Miss., July 18, 2006) (same).

In addition, "[a] prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system." *Hogan*, *supra*, at *9. (quoting *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).

In *Sandin v. Connor*, 515 U.S. 472, 481-83, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. *Id.* "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). In *Sandin*, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at *10 *(citing Sandin*, 515 U.S. at 484 (citations omitted). Thus, in *Sandin*, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Supreme Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and Hewitt, 459 U.S. at 460. *Id.*

"[T]he Due Process Clause does not protect every change in conditions of confinement which

has a substantial adverse effect upon a prisoner." *Id. (citing Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997)). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 225, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citations omitted)). The Fifth Circuit in *Madison* held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." *Id.* (citing *Madison*, 104 F.3d at 768; accord *Hernandez v. Velasquez*, 522 F.3d 556, 563 (5th Cir. 2008); *Dixon v. Hastings*, 117 Fed. Appx. 371, 2005 WL 17382, at \*1 (5th Cir. 2005); *Malchi v. Thaler*, 211 F.3d 953, 957-58 (5th Cir. 2000)). In *Hernandez* and *Madison*, the Fifth Circuit held that such restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest. *Id.* at \*11 (*citing Hernandez*, 522 F.3d at 563; *Madison*, 104 F.3d at 768. Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. *Id.* (citing *Sandin*, 515 U.S. at 484.)

Bruce's complaint establishes that, due to his placement in a holding cell, or "the hole," rather than a general population dorm, his telephone and commissary privileges were restricted. "These actions do not constitute such an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that particular form of due process of the type described in Wolff were required." *Id.* at \*11-12 (citing *Sandin*, 515 U.S. at 484; *Madison*, 104 F.3d at 768; see *Johnson v. Livingston*, 360 F. App'x 531, 532 (5th Cir. 2010) (citing *Malchi v. Thaler*, 211 F.3d 953,

958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."); *Hernandez*, 522 F.3d at 563 (distinguishing the "extreme conditions" described in *Wilkinson* and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); *Dixon*, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); *Payne v. Dretke*, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause"). As no claim of violation of constitutional rights cognizable under Section 1983 can be stated under the circumstances described by Bruce, his claim should be dismissed.

### 3. Right to Purchase Items from Commissary

Plaintiff also complains that he had no access to commissary items; more particularly, to "writing materials" to write his family regarding his bond. There is no constitutional right for an inmate to be able to purchase items from a commissary. *Patin v. LeBlanc*, 2012 U.S. Dist. LEXIS 106300, 2012 WL 3109402 (E.D. La. May 18, 2012); *Tokar v. Armontrout*, 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."); *Harrison v. Federal Bureau of Prisons*, 611 F. Supp.2d 54, 62 (D.D.C. 2009) ("It is established that an inmate has no federal constitutional right to purchase items from a prison commissary."); *Hopkins v. Keefe Commissary Network Sales*, No. 07-745, 2007 U.S. Dist. LEXIS 99140, 2007 WL 2080480, at *5 (W.D. Pa. Jul. 12, 2007). Accordingly, plaintiff has provided no set of facts in support of his claim that would entitle him to relief. Also, this claim is frivolous because it lacks an arguable basis

in law or in fact.

Accordingly,

*Conclusion*

**IT IS RECOMMENDED** that plaintiff's Civil Rights Complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers at Monroe, Louisiana, May 31, 2017.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**

8